THOMAS H. DAVIS AND KATHLEEN K. DAVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davis v. Commissioner
Docket No. 27080-85
United States Tax Court
T.C. Memo 1992-240; 1992 Tax Ct. Memo LEXIS 269; 63 T.C.M. (CCH) 2849; T.C.M. (RIA) 92240; April 23, 1992, Filed *269 Decision will be entered under Rule 155. Joyce Rebhun, for petitioner Kathleen K. Davis. Steven M. Roth, for respondent. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to the provisions of section 7443A(b) (4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653
Sec. 6659
(a)(2)
1978
$ 16,092
$ 805
N/A
$ 4,828
1979
21,421
1,071
N/A
6,422
1980
9,429
471
N/A
N/A 1981
23,752
[1] 1,188
[2]  N/A *270 The only issue requiring our decision is whether petitioner Kathleen K. Davis qualifies as an innocent spouse under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed herein, petitioners resided in California. [2]
*271 Kathleen K. Davis (petitioner) and Thomas H. Davis (Dr. Davis) were married in December 1969. Dr. Davis is a neurologist. During the years at issue petitioner was primarily a housewife. She had 2 years of post-high-school training in x-ray technology. Petitioners lived in Edina, Minnesota, from 1972 until May 1982, at which time they moved to California. During 1981, petitioner paid all the family bills, which included mortgage payments, and balanced the joint checking account, into which Dr. Davis' earnings were deposited. In early December 1981, Dr. Davis informed petitioner that they needed a second mortgage in order to finance some investments. Dr. Davis presented petitioner with documents to refinance their home for $ 38,000, which she signed. Later that month, Dr. Davis took out a third mortgage in the amount of $ 22,000 to finance further investments. Generally, petitioner relied upon Dr. Davis for all investment decisions and his representation that he sought advice from several investment counselors and financial advisers. In preparing their Federal income tax return for 1981, petitioner provided their accountant, Mr. Koonce, with relevant information relating *272 to credit card interest, mortgage interest, and medical expenses. Any other information concerning Dr. Davis' investments was provided by him to Mr. Koonce. Petitioner signed the 1981 Federal income tax return and claims for refund relating to the years 1978, 1979, and 1980, which arose out of loss carrybacks generated by the 1981 investments. Petitioners received refunds of $ 69,014 in Federal income tax and at least $ 7,006 in State income tax, which were deposited by petitioner into their joint bank account. Petitioners put their house in Minnesota up for sale in March 1982, and sold it in May 1982, for $ 118,000. They received $ 26,330.72 from the proceeds. (It appears that the second and third mortgages, totalling $ 60,000, were satisfied prior to the sale from the tax refund proceeds.) Dr. Davis resigned from his medical practice in Minnesota in March 1982. Petitioners moved to California in mid-1982 so that Dr. Davis could enter into a new medical practice. Shortly thereafter, Dr. Davis began to exhibit symptoms of mental deterioration caused by the onslaught of Huntington's disease. Petitioner and Dr. Davis were subsequently divorced. At the time of the divorce, there *273 were no marital assets except for their California residence. Respondent made the following adjustments to petitioners' 1981 Federal income tax return: Tax haven income
$ 2,176
Schedule C loss - Records
33,162
Partnership loss - Intl. Energy Savings
16,915 Partnership loss - Security Vaults Ltd.
9,136
Partnership loss - Cimarron Ltd.
16,629
Schedule A - Insurance
10,000
Total adjustments
$ 88,018
Both petitioner and Dr. Davis entered into stipulations of partial agreement with respondent concerning Cimarron Ltd. They conceded therein 100 percent of the deficiency attributable to the disallowance of deductions and/or credits with respect to the partnership, and that the deficiency would bear statutory interest at the rate imposed by section 6621(c). Respondent conceded the additions to tax. Petitioner has no knowledge concerning the purported tax haven income of $ 2,176. The Schedule C loss, for $ 33,162, relates to a record album investment entered into by Dr. Davis. Although petitioner recalls Dr. Davis' bringing a record album home and indicating something concerning ownership and investment, she has no knowledge of any specifics. Petitioner also has *274 no knowledge about the partnership losses from Intl. Energy Savings and Security Vaults Ltd. In 1981, she made no payments for insurance of $ 10,000, and has no idea as to what that policy may have pertained. OPINION At the outset we note that petitioner entered into a stipulation of partial agreement regarding Cimarron Ltd., and at trial indicated that she was not contesting any of the other adjustments in the notice of deficiency. Accordingly, subject to the agreement regarding Cimarron Ltd., we conclude that, as to the merits of the adjustments set forth in the notice of deficiency with regard to petitioner, we must sustain respondent. Notwithstanding her concessions, petitioner contends that she qualifies as an innocent spouse under section 6013(e). In order for petitioner to qualify for relief, the following conditions must be satisfied: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) In General. -- Under regulations prescribed by the Secretary, if (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse *275 establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. Petitioner has the burden of proving that all requirements for innocent spouse relief are satisfied. Rule 142(a); . Respondent concedes that provision of subparagraph (A) of the above subsection has been met. In addition, respondent concedes that petitioner meets the percentage test provided in section 6013(e)(4). Accordingly, the above provisions under subparagraphs (B), (C), and (D) are at issue. The second requirement for relief under section 6013(e) is that petitioner must prove that there is a substantial understatement of tax on the 1981 income *276 tax return which is attributable to grossly erroneous items of Dr. Davis. Sec. 6013(e)(1)(B). [3] A substantial understatement is defined in section 6013(e)(3) as "any understatement (as defined in section 6662(d)(2)(A)) which exceeds $ 500." Grossly erroneous items, as defined in section 6013(e)(2), means: (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. *277 Individual items of income or deductions may be separately considered in determining whether there is a substantial understatement of tax attributable to grossly erroneous items of one spouse. See , affd. . Accordingly, we will determine whether petitioner has proven a "grossly erroneous item" with respect to each adjustment. Any omission of income constitutes such an item. Sec. 6013(e)(2)(A). From the record, we conclude that the tax haven income is attributable to Dr. Davis and was omitted from the return. Since this adjustment is in excess of $ 500, it is a grossly erroneous item. With respect to the claimed losses, petitioner must demonstrate that the claimed losses have no basis in fact or law. Sec. 6013(e)(2)(B). In , affd. in an unpublished opinion (10th Cir. 1989), this Court stated that: A deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify *278 as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report, phony. [Fn. ref. omitted.] With respect to the deductions taken for the Records, Intl. Energy Savings, and Security Vaults Ltd., we hold that petitioner has not established that the deductions disallowed by respondent had no basis in fact or law. She has not established that the deductions were phony. Other than her testimony as to no personal knowledge (which relates to the section 6013(e)(1)(C) issue), petitioner has offered no evidence in an attempt to establish that the claimed deductions had no basis in fact or law, for example, by reconstruction of records, the testimony of Mr. Koonce (who prepared their return), or the testimony of other investment advisers upon whom Dr. Davis may have relied. Without more, we hold that petitioner has not sustained her burden. The mere disallowance by respondent of deductions in the notice of deficiency does not permit petitioner to conclude that the deductions *279 have no factual or legal basis. See Concerning the Cimarron Ltd. deduction, the fact that petitioner conceded respondent's adjustment thereto is not sufficient to establish a claimed loss for which there is no basis in fact or law. See . Accordingly, we conclude that petitioner has also failed to satisfy this requirement with respect to the Cimarron Ltd. deduction. [4]
As to the insurance deduction, we reach the opposite conclusion because we are satisfied that the insurance deduction is phony. Petitioner paid the couple's expenses, but made no payment for a $ 10,000 premium. She had no knowledge of the existence of any insurance policy of this nature. If there were such a policy, given Dr. Davis' disability, petitioner would surely have discovered *280 it. Therefore, this is a grossly erroneous item. Concerning the grossly erroneous items, we must now determine whether petitioner also meets the requirements of section 6013(e)(1)(C) and (D). As previously indicated, this case is appealable to the Ninth Circuit. Accordingly, we will follow the law of that circuit. See , affd. . A spouse has "reason to know" of the substantial understatement if a reasonably prudent taxpayer in her position, at the time she signed the return, could be expected to know that the return contained a substantial understatement. See , affg. ; [5], revg. an Oral Opinion of this Court. We look to such factors as the spouse's level of education, involvement in family financial affairs, the evasiveness or deceit of the culpable spouse, and any unusual or lavish expenditures inconsistent with the family's ordinary standard of living. See . *281 The record establishes that petitioner did not have knowledge of the omitted income or the insurance deduction. Although she kept the family books, this taken alone would not enable her to uncover Dr. Davis' unreported income. On the other hand, since she did keep the books, she would have known of the insurance policy, if it indeed existed. Accordingly, it is clear that petitioner had no knowledge of the transaction as to the omitted income or the insurance policy. However, "Even if a spouse is not aware of sufficient facts to give her reason to know of the substantial understatement, she nevertheless may know enough facts to put her on notice that such understatement *282 exists." . This test is essentially the same as the test used to determine whether petitioner had reason to know of the understatement; i.e., would a reasonably prudent taxpayer in her position be led to question the legitimacy of the item. If such is the case, then "a duty of inquiry arises, which, if not satisfied by the spouse, may result in constructive knowledge of the understatement being imputed to her." Id. Again, the facts in this record suggest that petitioner did not have reason to know of a substantial understatement and there were no facts which would have put her on notice that such an understatement existed. Accordingly, we hold that petitioner has met the requirements of section 6013(e)(1)(C). Finally, respondent argues that it would be inequitable, under the facts and circumstances, to grant petitioner innocent spouse relief under section 6013(e)(1)(D). Respondent maintains that petitioner and Dr. Davis netted approximately $ 20,000 as a result of refinancing their home in Minnesota and the resulting tax benefits which flowed from their investments. We find that to the extent petitioner received *283 any benefit therefrom, it was short lived. At best, after selling their Minnesota home, petitioners invested the net proceeds therefrom, plus any remaining tax refund proceeds, in a home in California. Shortly after moving to California, Dr. Davis began suffering from the effects of Huntington's disease and was unable to work. Their California home was eventually sold and, at the time of their divorce, all assets were dissipated due to Dr. Davis' illness. On these facts we conclude that petitioner did not acquire substantial assets or otherwise enjoy an increased standard of living as a result of the tax understatements. Therefore, it is not inequitable to grant relief to petitioner under the circumstances of this case. Accordingly, we hold that petitioner is entitled to be relieved of liability for deficiencies and additions to tax attributable to the tax haven income and the insurance deduction which we have determined are grossly erroneous items. To reflect our conclusions herein, the prior dismissal as to Thomas H. Davis for lack of prosecution, and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. For 1981, the addition to tax for negligence is codified under sec. 6653(a)(1). According to the stipulation of facts, petitioners resided in Edina, Minnesota, when the petition in this case was filed. We note that the record clearly establishes that petitioners have lived in California since approximately June 1982. Stipulations are generally given binding effect, but we have the discretion not to be bound by the stipulation of facts when clearly contrary to evidence presented at trial. See . Accordingly, we find that petitioners resided in California at the time the petition was filed herein. In so holding, we note that the law of the Ninth Circuit applies to this case, rather than the Eighth Circuit.
[2]↩ 50 percent of the interest due on $ 23,752.
3. On brief, petitioner contends that respondent conceded the requirement under sec. 6013(e)(1)(B) regarding substantial understatement of tax attributable to grossly erroneous items. We note that respondent maintained that this was at issue in the trial memorandum, as well as in the opening and reply briefs. Apparently, petitioner believes that respondent conceded this issue based upon the statements (or lack thereof) during the trial herein. Petitioner is correct in stating that trial stipulations are treated as admissions of a party, and that parties are ordinarily bound by such stipulations. See , affd. . Although respondent did not specifically address this issue at trial, such silence, in and of itself, does not constitute a concession. We note that petitioner also did not address this issue at trial; furthermore, respondent simply confined the remarks to those issues specifically addressed by petitioner. Accordingly, we conclude that petitioner's contention lacks merit.↩
4. Cf. , revg. , which is distinguishable.↩
5. We note that the Eighth Circuit has generally adopted the same test as outlined by the Ninth Circuit. See , revg. and remanding . We further note that our disposition of the case herein would be the same under the law of either circuit.↩